UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED
99 AUG 26 PM 4:56
U.S. DISTRICT COURT
N.D. OF ALABAMA

HOWARD THOMAS MITCHELL,      )
                             )
    Plaintiff,               )
                             )
vs.                          )
                             )   CV-97-BU-1155-S
CITY OF BIRMINGHAM, an       )
Alabama Municipal            )
Corporation,                 )
                             )
    Defendant.               )

ENTERED
AUG 27 1999

Memorandum Opinion

This cause comes on to be heard on a motion for summary judgment filed by the Defendant, the City of Birmingham ("Birmingham"), on March 5, 1998, and on a cross-motion for summary judgment filed by the Plaintiff, Howard Thomas Mitchell ("Mitchell"), on March 25, 1998. The motions are addressed to the issue of whether the denials to issue a Club Liquor Class II license and a Division II dance permit to the plaintiff violated his rights under the United States Constitution and the Alabama Constitution.

Summary judgment provides the parties an invaluable opportunity to test the mettle of a case before it ever reaches trial. On a motion for summary judgment, the court

assesses all of the proof the parties can bring to bear in order to ascertain whether a genuine need for trial is present. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is weighed heavily in favor of the non-movant; it is appropriate only if the court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment has the initial responsibility of informing this court of the grounds for its motion and specifically identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The movant's burden is not meager; it must illuminate for the court the reasons why the non-movant cannot or does not raise a genuine is of material fact sufficient to support a trial.

Once the moving party has satisfied this initial burden, however, the nonmoving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Company*, 32 F.3d 520, 523 (11th Cir. 1994). Rule 56(e) requires the nonmoving party to "go beyond the pleadings" and by "affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts'" showing there exist genuine issues for trial. *Celotex*, 477 U.S. at 324; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). "Tenuous insinuation" and empty speculation based on loose construal of the evidence will not satisfy the non-movant's burden. *Cf. Mesnick v. General Elec. Co.*, 950 F.2d 816, 820 (1st Cir. 1991), *cert. denied*, 504 U.S. 985 (1992).

While the court may consider the offered "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" in deciding

whether to grant or deny a summary judgment motion, FED. R. CIV. P. 56(c), the Rule "saddles the non-movant with the duty to 'designate' the specific facts in the record" supporting its claims. *Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996). "Rule 56 . . . does not impose upon the district court a duty to survey the entire record in search of evidence to support a non-movant's opposition." *Id. See also Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment."), *cert. denied*, — U.S. —, 116 S.Ct. 74 (1995).

In resolving whether a given factual dispute requires submission to a jury, the court must inspect the presented evidence through the looking glass of each party's substantive evidentiary burden. *Anderson*, 477 U.S. at 254-55. The court, however, must avoid weighing conflicting evidence for probity or making credibility determinations. *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992). "It is not part of the court's function, when deciding a motion for summary judgment, to decide issues of material fact, but rather decide whether such issues exist to be tried. The Court must avoid weighing conflicting evidence or making credibility determinations." *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 919 (11th Cir. 1993). At the same time, "[t]he nonmoving party must provide more than a mere scintilla of evidence to survive a motion for judgment as a matter of law; 'there must be a substantial conflict in evidence to support a jury question.'" *Tidwell v. Carter Products*, 135 F.3d 1422, 1425 (11th Cir. 1998) (citing *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir.1989)).

## Facts

Until November of 1994, Graham Jackson ("Jackson") operated the King of Clubs, a club in the Inverness community located in the Cahaba Valley Shopping Center on

United States Highway 280. The King of Clubs held a club II liquor license, permitting it to distribute alcohol for on-site consumption. Among its neighbors in the shopping center were a restaurant, a beauty shop, a coin-operated laundry, a uniform store and a real estate sales office.

In November of 1994, the King of Clubs closed. After its closure, Jackson approached Mitchell about purchasing the club. Mitchell expressed an interest in turning the establishment into a sexually-oriented club featuring nude dancing and the on-site sale of alcohol and came to Birmingham to inspect five or six of the sexually-oriented clubs operating within the City.[1] On November 15, 1994, Mitchell entered into a 120-day option to purchase the shopping center in which the King of Clubs had been located. On March 10, 1995, five days before expiration of the option to purchase, Mitchell applied for a transfer of Jackson's club II liquor license and applied for an adult division II dance permit at the location of the King of Clubs.

Prior to the issuance of any liquor license, the City Counsel of Birmingham must approve the application for the license. Code of the City of Birmingham § 12-10-2.1. To gain the permission of the City Counsel to obtain a liquor license, a petitioner must first "file a request for consent . . . with the chief of police." Id. The chief of police next investigates the "character and fitness of the applicant" and the "character and suitability"

---

[1] Mitchell, a resident of Holt, Florida, has some experience at operating sexually-oriented businesses. Mitchell owned a part interest in a sexually oriented business in Florida called "the Royal" for approximately one year during 1988 and 1989. Mitchell opened a second club in Mobile, Alabama, on Government Boulevard, named "Roosters," which operated from 1990 to 1993. Mitchell closed the club on Government Boulevard after he opened another club, also named "Roosters," on Airport Boulevard in Mobile in 1993. Mitchell operated the second Roosters from mid-1993 until January, 1998; during part of that time, the corporation was a package store due to an ordinance issued by the City of Mobile, Alabama, banning sales of alcohol in sexually oriented businesses. Mitchell has owned and operated three sexually oriented businesses, through at least three corporations, as follows: (1) the Royal; (2) Roosters on Government Boulevard, which moved to Airport Boulevard; and (3) E.Z.'s next to Roosters on Airport Boulevard. None of Mitchell's businesses operated for more than three straight years as an adult establishment. On two separate occasions, municipal actions resulted in the closure or reorganization of Mitchell's adult clubs.

of the location at which the liquor is to be distributed. The results of the investigation are then to be given to the Public Safety Committee, which will itself investigate the application and recommend to the City Council its approval or denial.[2] Finally, a public hearing is scheduled before the City Council, which ultimately determines whether to approve or deny the application.

> Section 12-3-21 of the Code of the City of Birmingham states that:
>
> Unless a permit therefor shall have been first obtained from the city as provided by this section, it shall be unlawful for any person, firm, private club or corporation, or its agents, officers, servants, employees or members, to permit, allow, condone or conduct any dance or dance type performance at any liquor or beer licensed place or club by a person or persons in their employment, under contract, or present upon the premises at sufferance, or upon invitation, expressed or implied, in the nature of entertainment, amusement or exhibition.

The extensive language of the ordinance extends to sexually-oriented adult entertainment upon the premises of a liquor-licensed business. Obviously, only those adult division II dance establishments that serve alcoholic beverages are required by the City to obtain a permit.[3]

As with an application for the subject liquor license, application for a division II dance permit must first be filed with the chief of police, who is to investigate the "character and fitness" of the applicant and the "character and suitability of the proposed location." The chief of police then provides the results of his investigation to the Public

---

[2] Applications and requests for Licenses and Permits are assigned to the Public Safety Committee for initial review. The background information from the chief of police and the completed application are a source of information that the Public Safety Committee considers in developing its recommendation to the Council.

[3] The parties discuss, at some length, the requirements of Article XXIII, § 12, of the Zoning Ordinance of Birmingham, which prescribes certain location restrictions on the building of a adult, sexually-oriented dancing establishment. Both parties admit, however, that there is no issue as to whether the Plaintiff's proposed club would comply with the ordinance. Further, adult bookstores and adult video facilities do not come to the City Council for approval of business licence because they serve no alcohol on the premises. *McDill Affidavit*.

Safety Committee for review. Also, approval of the division II dance permit application requires a vote of the City Council.

In addition to the requirements listed in the ordinance for grant of a division II dance permit, the City Council has a long-standing policy for all applicants requesting some sort of regulatory action to advise the neighborhood association of the affected community of the pending request and to present their proposals at the relevant neighborhood association meeting. However, any neighborhood association recommendation resulting from a community meeting is not binding on the Council.

The Cahaba Valley Shopping Center is included within the Overton Neighborhood of the City of Birmingham.[4] After the Plaintiff filed his applications for a liquor license and for a division II dance permit, the Overton Neighborhood Community Association held a meeting in April, 1995, attended by approximately twenty-five "concerned citizens," to discuss Mitchell's applications. At the Overton Neighborhood meeting, Mitchell and his attorney, Donald Blankenship, were present and spoke with the neighborhood members and other interested parties, including Byron Davis — the head of the Public Safety Committee, Shelby County Sheriff James Jones, a fire chief, church parishioners and residents living outside the city limits. The citizens at the community meeting expressed concern over potential problems from "[r]iffraff, bikers, and uncontrollable crowds" that might attend Mitchell's adult club.

The Public Safety Committee scheduled a meeting on May 18, 1995, to determine whether it would recommend that a liquor license and division II dance permit be granted pursuant to Mitchell's applications. Although notice of the meeting was sent to Mitchell,

---

[4] In 1988, the City annexed the property on which the Cahaba Valley Shopping Center is located, and, at that time, the City exempted it from ad valorem tax and occupation tax for 15 years. *Id.* at Exhibit 16. The City is divided into ninety-nine different neighborhood communities, one of which is the Overton Community. *Davis Deposition* at 31-33.

he chose not to attend.[5] The Committee recommended against issuing the license and permit to Mitchell. According to Byron Davis, traffic was a concern of the Committee. In addition, in the report of the chief of police to the Committee, it was noted that the Overton Neighborhood Community opposed the permit. Next, the Public Safety Committee scheduled a public hearing before the Council as a whole for consideration of Mitchell's requests for a liquor license and a dance permit.

Mitchell was advised that on May 30, 1995, the Council would consider evidence on his applications for a license and a permit. At the hearing, Mitchell was present and represented by his attorney, Donald Blankenship. Also present was an appraiser, Walter Jenkins, hired by Mitchell. At the meeting, persons from different segments of the community made statements to the Council against the issuance of a license and a permit to Mitchell.

Jerry Johnson, speaking on behalf of Horizon 280, a public-private partnership designed to perpetuate and enhance the local business environment, stated that Mitchell's sexually oriented business would not be conducive to the business environment of the area. Zebedee Coleman, President of the Overton Neighborhood Community Association of Birmingham, objected to having Mitchell's proposed business located near the Overton Community. Sheriff James Jones of Shelby County, Alabama, stated that the proposed business would create hazardous alcohol related driving problems, increased crime, devaluation of property, and traffic dangers on Highway U.S. 280. Sheriff Jones also stated that an adult establishment selling alcohol was a greater threat to the public safety than a restaurant which was in the business of selling food and alcohol. Robbie Owens, District Attorney of Shelby County, objected to the location of Mitchell's proposed business at the site because of safety concerns. Leo Joseph, an appraiser, complained

---

[5] The notice states that "[y]ou or an officer of your corporation or company must be present at this meeting for your application to be considered."

Mitchell's proposed business would not be compatible with the other businesses in the area and that it would create a strong potential for devaluation of the property values of businesses located near the proposed adult entertainment business. Maurice Wilheim, a mortgage banker with a business located near the proposed site, complained that Mitchell's business would be detrimental to his own family-oriented business.

City Council member William Bell noted that the Council had approved a contract between the City and other governmental and private entities for the regulation of the United States Highway 280 corridor.[6] Council member Pat Sewell stated that she had a real estate background and that, based upon her experience with the sexually oriented businesses in her district, property values decreased for those businesses located near a sexually-oriented establishment.

Mitchell and his attorney were then given the opportunity to answer the questions raised by the Council and the comments made by the citizens. Mitchell testified that he owned and operated another liquor and adult entertainment business in Mobile, Alabama, named Roosters. He stated that he did not believe that the traffic would be adversely affected by his proposed business establishment in the Cahaba Valley Shopping Center. The Plaintiff also opined that a restaurant selling alcohol posed as great a threat to the public safety as his adult establishment would when it sold alcohol. Walter Jenkins, the appraiser hired by Mitchell, stated that, after reviewing the site, he did not believe that the property values of the businesses in the area would decrease. Mr. Jenkins contended, based upon his experience and investigation, that property values around the proposed sexually oriented business would be unaffected. Attorney Donald Blankenship also spoke

---

[6] Annexation agreements for the Shelby County property, upon which the club would be located, were structured to induce economic growth in the area. The Council, on October 19, 1993, in a regular public meeting, approved an equal participation agreement for maintenance along Highway U.S. 280 between the City of Hoover, Alabama, the City of Birmingham, Alabama, Jefferson County, Shelby County and the Horizon 280 Association. The City made additional appropriations for improvements along the Highway U.S. 280 corridor in 1995.

to the Council and reiterated Mitchell's position on the issues.

The Council voted to deny the issuance of the licence and permit requested by Mitchell. Although the location of the plaintiff's business would not violate any zoning ordinance, the Counsel considered the location of Mitchell's proposed business as a factor in denial of the applications. The Counsel also gave as further reasons for the denial of the liquor license and division II dance permit the opposition of the community and local concern with traffic, crime, and property values.

Contentions & Analysis[7]

The Plaintiff apparently alleges as grounds for relief against the denial of the division II dance permit (1) that the ordinance under which the permit was denied is facially invalid under the First Amendment; (2) that the dancing ordinance violated the First Amendment as it was applied to the plaintiff; (3) that because the licensing and permitting procedures lacked any clear standards, they violated the Plaintiff's Fourteenth Amendment right to due process; and (4) the denial of the liquor license and the denial

---

[7] Neither movant has been very clear in informing the court of the reasons why summary judgment is due in its behalf. Federal Rule of Civil Procedure 56 places on each movant a burden of articulation, i.e., the movant must provide in cogent fashion specific reasons for finding that the non-moving party has failed to raise a genuine issue of triable fact. The absence of clarity in the briefs filed by each party leaves this Court with the strong impression that to the degree that either moving party has satisfied its initial burden, it has done so by the barest of margins.

In addition, the Court has gone to great pains in order to discern exactly *what* the Plaintiff's claims are and the manner in which those claims must be proven. In addition to making careful attempts to decipher the Plaintiff's claims, which included the entry of an order on May 15, 1998, for the Plaintiff to more clearly state his claims, and the entry of a show cause order on November 23, 1998, requesting that the Plaintiff describe to the Court his First Amendment claims in the complaint, the Court has struggled to understand specifically what the Defendant's concerns with the Plaintiff's claims are. To the degree, then, that the Court's analysis does not appear to either party to model their arguments, it is not due to inadvertent or intentional avoidance of the issue, but a failure of the parties to communicate clearly their positions.

of the dancing permit each violated the Equal Protection Clause of the Fourteenth Amendment because, without reason, a license or permit was granted to others, but denied to the Plaintiff. The Plaintiff does not contend that his liquor license was denied in violation of the First Amendment's prohibitions on government regulation of speech. The above grounds for relief are asserted by the Plaintiff both under the United States Constitution and under the Alabama Constitution. The Defendant, in its response to the Plaintiff's motion, apparently contests all the Plaintiff's claims (1) because the Plaintiff lacks a life, liberty or property interest in either the permit or the license; (2) because the Plaintiff was given notice of the action of the City Council and was given the opportunity to be heard; (3) because the decision not to give the Plaintiff a license and permit was not arbitrary and capricious; (4) because the City Council could permissibly regulate the secondary effects of the sale of alcohol and of nude dancing as time, place and manner regulation; and (5) because the City Council did not treat the Plaintiff differently from other applicants in denying the license and permit.

In rendering a decision on the permit and license applications, the City Council had before it four possible decisions: (1) it could grant both the license and the permit, (2) it could grant the license but deny the permit, (3) it could deny the license and grant the permit, or (4) it could deny both the license and the permit. Given the language of the division II dance permit ordinance, any denial of the liquor license would render a grant of the permit ineffectual or useless, as a division II dance permit is required *only* if the dance permit applicant has a license to sell liquor. The same holds for the case where both the liquor license and the division II dance permit are denied: If an individual does not have a license to sell alcohol, then the denial of the dance permit will not affect whether or not the individual can conduct the dancing activities proscribed in the ordinance. Because the denial of the division II dance permit was, therefore, an irrelevant decision if the liquor license was properly denied, the court will address the propriety of the denial

of the liquor license as an initial matter.

The Plaintiff asserts two reasons for concluding that the denial of his liquor license was unconstitutional, neither of them related to his First Amendment claim. First, the Plaintiff argues, the liquor license was denied him without due process of law in violation of the Fourteenth Amendment of the United States Constitution. Second, he contends, the liquor license was denied him in violation of equal protection of the laws, also under the Fourteenth Amendment. His argument on this issue boils down to a simple paragraph:

> 5. The plaintiff was denied due process and equal protection of [the] law, under both the United States and Alabama Constitutions, because the City [Council] arbitrarily and capriciously denied plaintiff's application for the transfer of a club II liquor license. The liquor license ordinance, § 12-10.2.1, requires the City Council to determine the "character and suitability of the proposed location" for which the license is sought. Like the dance permit ordinance, there are no standards or criteria for making this determination. See: *Black v. Pike County Commission*, 360 So.2d 303 (Ala. 1976).

Plaintiff's Amended Response to Defendant's Motion for Summary Judgment and Plaintiff's Cross Motion for Summary Judgment at 8. The Court will now address each of the Plaintiff's claims in turn.

**A. Whether denial of the liquor license violated the due process clause of the Fourteenth Amendment of the United States Constitution.**

To demonstrate that one was denied procedural due process, a Plaintiff must demonstrate two things: (1) that he, she or it enjoys a life, liberty or property interest in the thing deprived by government action and (2) that he, she or it did not receive sufficient process regarding the deprivation of that interest. *See Ross v. Clayton County, Georgia*, 173 F.3d 1305, 1307 (11th Cir. 1999). The City contends that the Plaintiff fails to present a genuine issue of triable fact on both counts.

First, the City argues that the Plaintiff's interest in the transfer of the Jackson's

liquor license to him was not a property interest protected by the Fourteenth Amendment. The Plaintiff, apparently, disputes this.

> The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits. These interests — property interests — may take many forms.
>
> * * *
>
> Certain attributes of 'property' interests protected by procedural due process emerge from these decisions. To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.

*Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 576-77 (1972). "This determination requires examination of relevant state law." *Ross v. Clayton County, Georgia*, 173 F.3d at 1307. *See also Smith v. City of Vernon*, CV 98-BU-0546-S, Memorandum Opinion of July , 1999, at 9 (N.D. Ala. 1999) ("Property interests are not created by the Constitution but are defined by existing rules or understandings stemming from an independent source such as state law.").

The Court agrees with the City's argument that its ordinance governing the grant of Club Liquor Class II license does not vest in Mitchell a property interest in the license. A further, and the Court believes, stronger reason for concluding that Mitchell has no property interest in the liquor license lies in the law of Alabama governing the grant of all liquor licenses in the State. All liquor licenses issued in the State of Alabama must ultimately be approved and issued by the Alabama Alcoholic Beverage Control Board ("ABC Board"). *See* Ala. Code § 28-3A-43(9) (permitting the ABC Board to issue and renew licenses "to reputable and responsible persons" to sell liquor at a club).[8] In a class

---

[8] Both the State and municipality are permitted to charge a license fee for issuance of the liquor license by the ABC Board. *See* § 28-3A-21 (c).

1 municipality, such a Birmingham, prior to the grant of a liquor license by the ABC Board, the municipality, or a circuit court reversing the denial of a license by the municipality, must approve the license. Ala. Code § 28-1-6(a). If the license is denied by the class 1 municipality (or on review by the circuit court), the Board is not required to consider whether a license is to issue. *Id.* If a license is approved by the municipality, the ABC Board must still, ultimately, approve the grant of the license. Thus, even if the municipality, through its own ordinances, binds itself to granting a license whenever certain preconditions are satisfied, that license can still be denied by the ABC Board. Therefore, in determining whether the Plaintiff has a property interest in the transfer of Jackson's license, whatever obligations the City might have are not the determining factor. It is whether the ABC Board is required to permit the transfer of the license under certain circumstances that determines whether a property right in the transfer of the liquor license has been created.

Under Alabama law, the hopeful transferee of a liquor license is in no better position than an aspiring applicant to receive a liquor license from the ABC Board. Ala. Code § 28-3A-24(k). Section 28-3A-23(b) states the standard for the receipt of the liquor license in Alabama from the ABC Board: "Licenses shall be granted and issued by the board only to reputable individuals . . . ." From this language it is clear that the ABC Board is not required to give the license to any prospective applicant, only that it may give a license to those applicants who are reputable persons. There are no stated positive criteria under which an applicant is entitled to the license. *See also Arrington v. Dickerson*, 915 F.Supp. 1503, 1509 (M.D. Ala. 1995) (noting that there is no requirement that under § 28-3A-11 — governing the grant of liquor licenses to lounges — that a city council *must* in a given circumstance award a liquor license). Further, under Alabama state law, an applicant for a liquor license does not hold a property interest in that license; the license is granted as a matter of privilege, not of right. *See Ott v. Everett*, 420 So.2d 258, 260-61 (Ala. 1982).

As there is no requirement that the ABC Board grant the license, regardless of the municipality's decision (or an ordinance requiring the approval of a license, which there does not appear to be), there is ultimately no legitimate claim of entitlement to the license. Therefore, lacking a property interest in the transfer of the license, the Plaintiff's Fourteenth Amendment due process claim fails.[9] On this issue, the Defendant's motion for summary judgment will be GRANTED.

**B. Whether denial of the liquor license violated the equal protection clause of the Fourteenth Amendment of the United States Constitution.**

The equal protection clause of the Fourteenth Amendment to the constitution encompasses several types of challenge to government action. The first type of challenge is one that a statute enacted or regulation promulgated by a government is, on its face, discriminatory. Absent discrimination against a historically suspect class or a fundamental right, a Plaintiff will prevail only "if the distinction rationally furthers a legitimate state purpose" — that is, through a demonstration no rational relationship exists between the statutory classification and a legitimate state goal. *Hooper v. Bernalillo County Assessor*, 472 U.S. 612, 617 (1985). "When the statute facially discriminates against certain groups or entrenches upon certain fundamental interests, courts have required a closer connection between the statutory classification and the state purpose." *E & T Realty v. Strickland*, 830 F.2d 1107, 1112 n.5 (11th Cir. 1987) *cert. denied*, 485 U.S. 961 (1988). *See Shaw v. Reno*, 509 U.S. 630, 643 (1993) (stating that "the Fourteenth Amendment requires state legislation that expressly distinguishes among citizens because of their race to be narrowly tailored to further a compelling governmental interest"). *See also Plyler v. Doe*, 457 U.S. 202, 217 (1982) ("With respect to [certain] classifications, it is appropriate to enforce the mandate of equal protection by requiring the State to demonstrate that its classification

---

[9] For identical reasons, the Plaintiff's unargued state law due process claim fails as well.

has been precisely tailored to serve a compelling governmental interest.").

An equal protection challenge of the second sort exists where there is a facially neutral statute or regulation which, in its apparently neutral application, has discriminatory consequences. Where this occurs, a plaintiff seeking to demonstrate a denial of equal protection of the laws must demonstrate that, in addition to its disparate impact, discrimination was a motivating factor in the promulgation of the law. *See Brooks v. Miller*, 158 F.3d 1230, 1242 (11th Cir. 1998), *cert. denied sub nom.*, *Brooks v. Barnes*, — U.S. —, 119 S.Ct. 1805 (1999). *See also Burton v. City of Belle Glade*, 178 F.3d 1175, 1188-89 (11th Cir. 1999). Again, once it is established that a law has a discriminatory motive and effect, depending upon the basis of classification, the court is to apply the appropriate degree of scrutiny. The typical case is one where the underlying motivation of a statute is race or gender, in which case the law will almost invariably be unconstitutional. *See Burton v. City of Belle Glade*, 178 F.3d at 1192 ("Once a plaintiff proves that race was the predominant factor, however, the redistricting decision then becomes subject to strict scrutiny: it must be justified by a compelling state interest and be narrowly tailored to achieve that interest.") However, non-suspect classifications abound, and discrimination, even purposeful, against a non-suspect class is permissible if it is rationally related to a legitimate non-discriminatory reason.

The final type of challenge is to the partial administration of a neutral law by the government entity. *See Yick Wo v. Hopkins*, 118 U.S. 356, 373, 374 (1886). Mitchell asserts this type of claim in his allegation that he received unequal treatment from the City Council when compared to other similarly situated applicants for a liquor license. However, the Court believes the reasoning asserted by the district court in *Arrington v. Dickerson*, 915 F.Supp. at 1509-10 to be persuasive:

> To establish an equal protection claim, a plaintiff must show that he was treated differently from other individuals similarly situated. *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 [] (1985) ("The Equal Protection Clause of the

> Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."). "Equal protection does not exist in a vacuum; '[t]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same.'" *Pollard v. City of Chicago*, 643 F.Supp. 1244, 1252 (N.D.Ill.1986) (quoting *Tigner v. Texas*, 310 U.S. 141, 145 [] (1940)). Thus, to survive a motion to dismiss, Mr. Arrington must first allege unequal treatment of similarly situated individuals.

Although this case involves a summary judgment motion rather than a motion to dismiss, the Plaintiff's claim fails because he has failed to bring forward any evidence of a comparator with similar relevant features who was treated dissimilarly. Although, arguably, the Plaintiff had such a ready-made comparator in Jackson, the Plaintiff does not hold him forth as such and attempt to demonstrate similarity between them. Arguably, given changing conditions in the location, there may be significant differences between the two. As such, the Defendant's motion for summary judgment on this claim will be GRANTED.

Because the Plaintiff has presented no genuine issue of triable fact with regard to his denial of a liquor license, he can claim no harm from the denial of the division II dance permit, as any requirement that the Plaintiff have a division II dance permit is purely contingent on the Plaintiff's actually having a liquor license. As such, the Defendant's motion for summary judgment will be GRANTED with regard to all claims arising out of the denial of a division II dance permit. The Plaintiff's cross-motion for summary judgment will be DENIED.

## Conclusion

For the foregoing reasons, the Defendant's motion for summary judgment will be GRANTED. The Plaintiff's cross-motion for summary judgment will be DENIED. This case will be dismissed, with prejudice.

DONE and ORDERED this 26th day of August, 1999.

H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE